**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 7 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| INNOVATION LAW LAB; CENTRAL AMERICAN RESOURCE CENTER OF NORTHERN CALIFORNIA; CENTRO LEGAL DE LA RAZA; UNIVERSITY OF SAN FRANCISCO SCHOOL OF LAW IMMIGRATION AND DEPORTATION DEFENSE CLINIC; AL OTRO LADO; TAHIRIH JUSTICE CENTER,<br><br>Plaintiffs-Appellees,<br><br>v.<br><br>KEVIN K. MCALEENAN, Acting Secretary of Homeland Security, in his official capacity; U.S. DEPARTMENT OF HOMELAND SECURITY; LEE FRANCIS CISSNA, Director, U.S. Citizenship and Immigration Services, in his official capacity; JOHN L. LAFFERTY, Chief of Asylum Division, U.S. Citizenship and Immigration Services, in his official capacity; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; TODD C. OWEN, Executive Assistant Commissioner, Office of Field Operations, U.S. Customs and Border Protection, in his official capacity; U.S. CUSTOMS AND BORDER PROTECTION; RONALD D. VITIELLO, Acting Director, U.S. Immigration and Customs Enforcement, in his official capacity; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | No. 19-15716<br><br>D.C. No. 3:19-cv-00807-RS<br><br>OPINION |

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted April 24, 2019
San Francisco, California

Before: O'SCANNLAIN, W. FLETCHER, and WATFORD, Circuit Judges.

PER CURIAM:

In January 2019, the Department of Homeland Security (DHS) issued the Migrant Protection Protocols (MPP), which initiated a new inspection policy along the southern border. Before the MPP, immigration officers would typically process asylum applicants who lack valid entry documentation for expedited removal. If the applicant passed a credible fear screening, DHS would either detain or parole the individual until her asylum claim could be heard before an immigration judge. The MPP now directs the "return" of asylum applicants who arrive from Mexico as a substitute to the traditional options of detention and parole. Under the MPP, these applicants are processed for standard removal proceedings, instead of expedited removal. They are then made to wait in Mexico until an immigration judge resolves their asylum claims. Immigration officers exercise discretion in returning the applicants they inspect, but the MPP is categorically inapplicable to unaccompanied minors, Mexican nationals, applicants

who are processed for expedited removal, and any applicant "who is more likely than not to face persecution or torture in Mexico."

Eleven Central American asylum applicants who were returned to Tijuana, Mexico, and six organizations that provide asylum-related legal services challenged the MPP on several grounds in the district court. After concluding that the MPP lacks a statutory basis and violates the Administrative Procedure Act (APA), the district court enjoined DHS on a nationwide basis "from continuing to implement or expand the [MPP]."

DHS has moved for a stay of the preliminary injunction pending its appeal to this court. Our equitable discretion in ruling on a stay motion is guided by four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotation marks omitted). We begin with a discussion of the first factor, which turns largely on the plaintiffs' likelihood of success on their claim that the MPP lacks statutory authorization.

I

Some background is in order before addressing the merits of the plaintiffs' statutory claim. Congress has established an exhaustive inspection regime for all

non-citizens who seek admission into the United States. *See* 8 U.S.C. § 1225(a)(3). Applicants for admission are processed either through expedited removal proceedings or through regular removal proceedings. Section 1225(b)(1) outlines the procedures for expedited removal and specifies the class of non-citizens who are eligible for expedited removal:

> If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

§ 1225(b)(1)(A)(i). Simply put, an applicant is eligible for expedited removal only if the immigration officer determines that the individual is inadmissible on one of two grounds: fraud or misrepresentation (§ 1182(a)(6)(C)) or lack of documentation (§ 1182(a)(7)).

All applicants for admission who are not processed for expedited removal are placed in regular removal proceedings under § 1225(b)(2)(A). That process generally entails a hearing before an immigration judge pursuant to § 1229a. Section 1225(b)(2)(B) provides exceptions to § 1225(b)(2)(A), while § 1225(b)(2)(C) permits applicants processed under § 1225(b)(2)(A) to be returned

to the contiguous territory from which they arrived for the duration of their removal proceedings. Section 1225(b)(2) provides in full:

> **(A) In general**
>
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.
>
> **(B) Exception**
>
> Subparagraph (A) shall not apply to an alien—
>
> > **(i)** who is a crewman,
> >
> > **(ii)** to whom paragraph (1) applies, or
> >
> > **(iii)** who is a stowaway.
>
> **(C) Treatment of aliens arriving from contiguous territory**
>
> In the case of an alien described in subparagraph (A) who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title.

DHS relies on the contiguous-territory provision in subsection (b)(2)(C) as the statutory basis for the MPP. That provision authorizes DHS to return "alien[s] described in subparagraph (A)" to Mexico or Canada. § 1225(b)(2)(C). The phrase "described in" refers to the "salient identifying features" of the individuals subject to this provision. *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) (emphasis and internal quotation marks omitted). Because the plaintiffs in this case are not

"clearly and beyond a doubt entitled to be admitted," they fit the description in § 1225(b)(2)(A) and thus seem to fall within the sweep of § 1225(b)(2)(C).

As the district court interpreted the statute, however, the contiguous-territory provision may not be applied to applicants for admission who could have been placed in expedited removal under § 1225(b)(1), even if they were placed in regular removal proceedings.  The crux of this argument is § 1225(b)(2)(B)(ii), which provides that "[s]ubparagraph (A) shall not apply to an alien . . . to whom paragraph (1) applies."  So long as the applicant is eligible for expedited removal, the district court reasoned, § 1225(b)(1) "applies" to that individual.  On this account, it is immaterial that the plaintiffs were not in fact processed for expedited removal during their inspection at the border.

The primary interpretive question presented by this stay motion is straightforward:  Does § 1225(b)(1) "apply" to everyone who is *eligible* for expedited removal, or only to those *actually processed* for expedited removal?  The interpretive difficulty arises mainly because the inadmissibility grounds contained in subsections (b)(1) and (b)(2) overlap.  A subset of applicants for admission—those inadmissible due to fraud or misrepresentation, § 1182(a)(6)(C), and those who do not possess a valid entry document, § 1182(a)(7)—may be placed in expedited removal.  § 1225(b)(1)(A)(i).  But as we read the statute, anyone who is "not clearly and beyond a doubt entitled to be admitted" can be

processed under § 1225(b)(2)(A). Section 1225(b)(2)(A) is thus a "catchall" provision in the literal sense, and Congress' creation of expedited removal did not impliedly preclude the use of § 1229a removal proceedings for those who could otherwise have been placed in the more streamlined expedited removal process. *See Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 522–24 (BIA 2011).

Because the eligibility criteria for subsections (b)(1) and (b)(2) overlap, we can tell which subsection "applies" to an applicant only by virtue of the processing decision made during the inspection process. Take first the procedures for designating an applicant for expedited removal. When the immigration officer "determines" that the applicant "is inadmissible" under § 1182(a)(6)(C) or (a)(7), he "shall order the alien removed from the United States without further hearing" unless the applicant requests asylum or expresses a fear of persecution, in which case the officer "shall refer the alien for an interview by an asylum officer under subparagraph (B)." 8 U.S.C. § 1225(b)(1)(A)(i)–(ii). In other words, the officer decides inadmissibility on the spot without sending the matter to an immigration judge. DHS's regulations further explain that a § 1225(b)(1) determination entails either the issuance of a Notice and Order of Expedited Removal or the referral of the applicant for a credible fear screening. 8 C.F.R. § 235.3(b)(2)(i), (4); *see also id.* § 208.30. And to "remove any doubt" on the issue, § 1225(b)(2)(B) clarifies

that applicants processed in this manner are not entitled to a proceeding under § 1229a. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 226 (2008).

In contrast, § 1225(b)(2) is triggered "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Following this determination, the officer will issue a Notice to Appear, which is the first step in a § 1229a proceeding. 8 C.F.R. § 235.6(a)(1)(i); *see also id.* § 208.2(b). A Notice to Appear can charge inadmissibility on *any* ground, including the two that render an individual eligible for expedited removal. 8 U.S.C. § 1229a(a)(2). The officer then sets a date for a hearing on the issue before an immigration judge. *See Pereira v. Sessions*, 138 S. Ct. 2105, 2111 (2018).

The plaintiffs were not processed under § 1225(b)(1). We are doubtful that subsection (b)(1) "applies" to them merely because subsection (b)(1) *could have been* applied. And we think that Congress' purpose was to make return to a contiguous territory available during the pendency of § 1229a removal proceedings, as opposed to being contingent on any particular inadmissibility ground. Indeed, Congress likely believed that the contiguous-territory provision would be altogether unnecessary if an applicant had already been processed for expedited removal. The plaintiffs are properly subject to the contiguous-territory provision because they were processed in accordance with § 1225(b)(2)(A).

Though the plaintiffs contend otherwise, our approach is consistent with the subsections' headings. Section 1225(b)(1) is titled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled," and § 1225(b)(2) is labeled "Inspection of other aliens." The plaintiffs interpret § 1225(b) to create two mutually exclusive *pre-inspection* categories of applicants for admission; as explained above, we read the statute to create two mutually exclusive *post-inspection* categories. In our view, those who are not processed for expedited removal under § 1225(b)(1) are the "other aliens" subject to the general rule of § 1225(b)(2).

Our interpretation is also consistent with *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), the principal authority on which the plaintiffs rely. There, the Supreme Court explained that "applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Id.* at 837. As the Court noted, "Section 1225(b)(1) applies to aliens *initially determined* to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (emphasis added). "Section 1225(b)(2) is broader," since it "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id.* We think our interpretation more closely matches the Court's understanding of the mechanics of § 1225(b), as it is attentive to the

role of the immigration officer's initial determination under § 1225(b)(1) and to § 1225(b)(2)'s function as a catchall.

For the foregoing reasons, we conclude that DHS is likely to prevail on its contention that § 1225(b)(1) "applies" only to applicants for admission who are processed under its provisions. Under that reading of the statute, § 1225(b)(1) does not apply to an applicant who is processed under § 1225(b)(2)(A), even if that individual is rendered inadmissible by § 1182(a)(6)(C) or (a)(7). As a result, applicants for admission who are placed in regular removal proceedings under § 1225(b)(2)(A) may be returned to the contiguous territory from which they arrived under § 1225(b)(2)(C).

The plaintiffs have advanced only one other claim that could justify a nationwide injunction halting the implementation of the MPP on a wholesale basis: that the MPP should have gone through the APA's notice-and-comment process. DHS is likely to prevail on this claim as well, since "general statements of policy" are exempted from the notice-and-comment requirement. 5 U.S.C. § 553(b)(A). The MPP qualifies as a general statement of policy because immigration officers designate applicants for return on a discretionary case-by-case basis. *See Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 507 (9th Cir. 2018); *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013 (9th Cir. 1987).

II

The remaining factors governing issuance of a stay pending appeal weigh in the government's favor. As to the second factor, DHS is likely to suffer irreparable harm absent a stay because the preliminary injunction takes off the table one of the few congressionally authorized measures available to process the approximately 2,000 migrants who are currently arriving at the Nation's southern border on a daily basis. *See East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1250–51 (9th Cir. 2018). DHS has therefore made a strong showing on both the first and second factors, which are the "most critical." *Nken*, 556 U.S. at 434.

The other two factors support the issuance of a stay as well. The plaintiffs fear substantial injury upon return to Mexico, but the likelihood of harm is reduced somewhat by the Mexican government's commitment to honor its international-law obligations and to grant humanitarian status and work permits to individuals returned under the MPP. We are hesitant to disturb this compromise amid ongoing diplomatic negotiations between the United States and Mexico because, as we have explained, the preliminary injunction (at least in its present form) is unlikely to be sustained on appeal. Finally, the public interest favors the "efficient administration of the immigration laws at the border." *East Bay Sanctuary Covenant*, 909 F.3d at 1255 (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)).

The motion for a stay pending appeal is **GRANTED**.